*New-London*,
July, 1844.

## JEWETT *against* THE THAMES BANK.

Jewett
*v.*
The Thames
Bank.

The members of an ecclesiastical society, without local limits, formed by voluntary association, pursuant to the 13th section of the statute relating to religious societies, are not individually liable for the debts of such society.

THIS was a bill in chancery to restrain the defendants from further proceedings against the property of the plaintiff for the collection of a debt against *The Norwich Falls Society.*

This society was formed, by the voluntary association of individuals, on the 4th of *November*, 1826, and was then organized, by the choice of a clerk, treasurer and committee. At an adjourned meeting, on the 13th of the same month, at which *Thomas M. Jewett*, the plaintiff, was present, he was admitted, by a vote of the society, a member thereof. At two subsequent meetings, he was appointed clerk *pro tem.*, and acted in that capacity. At a meeting held on the 20th of *April*, 1838, he was appointed one of the committee of the society; (*a*) and as a member of such committee, he subsequently signed a notice for a meeting of the society on the 2d of *August*, 1839; and the society met in pursuance of such notice. He usually attended public worship with this society. In the early part of *October*, 1842, he removed from the town of *Norwich* to the town of *Lisbon*, seven miles distant, thereby changing his domicil and settlement.

On the 16th of *November*, 1837, the defendants commenced an action against the society, by attaching their land, returnable to the county court. This action was continued in that court from term to term, until *June*, 1842, when judgment was rendered by default against the society, for 2515 dollars, 60 cents, damages, and 50 dollars, 7 cents, costs. Upon this judgment execution was issued, which was levied upon 25 shares of *The Jewett City Bank*, standing in the plaintiff's name.

The cause of action, on which the above-mentioned suit was brought, was a note signed by *William C. Gilman* and *William P. Greene*, two of the five persons, who were the build-

(*a*) For brevity's sake, the formal votes here referred to, and some other proceedings, not bearing upon the point ultimately decided, though alluded to in the arguments of counsel, are omitted in this statement.—*R.*

*New-London,*
*July, 1844.*

*Jewett*
*v.*
*The Thames*
*Bank.*

ing committee of the society, made payable to and indorsed by *Greene,* and negotiated by him to *The Thames Bank ;* and it was given wholly for the expences incurred in the building of the house of worship occupied by the society. The land on which this house stands, was conveyed by deed to the society. The land and house are worth 2000 dollars, and no more.

The case was reserved for the advice of this court as to what decree should be passed.

*Rockwell* and *Foster,* for the plaintiff, contended, 1. That the members of an ecclesiastical society, without local limits, formed by voluntary association, since the adoption of the constitution of this state, are not personally liable for the debts of the society.

In the first place, such an exemption has attached to the members of corporations from the earliest period of our juridical history, and constitutes a characteristic point of difference between corporations and partnerships. *Ang. & Ames on Corp.* 23. *Merchants Bank* v. *Cook,* 4 *Pick.* 414. *Myers* v. *Irwin,* 2 *Serg. & Rawle,* 371. *Adams* v. *Wiscasset Bank,* 1 *Greenl.* 364.

Secondly, this society is a private corporation, aggregate, not a *quasi* corporation. *Ang. & Ames on Corp.* 16. *Greenl. Ev. s.* 331, 2. *Quasi* corporations have territorial limits, and generally no express charter of incorporation. 2 *Kent's Com.* 274.

Thirdly, there is nothing to be found in the statute under which associations for ecclesiastical purposes are constituted corporations, which prevents the application of these principles. *Stat.* 577. *tit.* 98. *s.* 13. (ed. 1838.)

Fourthly, there is an analogy between the creation of these corporations and the creation of joint stock corporations, library companies, and academies. *Stat.* 107. 402. 535. (ed. 1838.) It was never claimed, that the members of these corporations were individually liable.

Fifthly, even in cases where the members of the corporation are made personally liable by statute, courts go very far to save individuals from paying the debts of the corporation. *Bond* v. *Appleton,* 8 *Mass. R.* 472. *Child* v. *Coffin,* 17

*Mass. R.* 64. *Middletown Bank* v. *Magill* & al. 5 *Conn. R.* 28.

Sixthly, the provisions of the 7th article of our constitution, are not inconsistent with the plaintiff's claim. *Stat.* 33, 4. (ed. 1838.) The expression in the 2d section was not intended to create a liability of individual corporators, nor to declare what the law was. But even if it did, it can apply only to *quasi* corporations then existing—not to corporations aggregate, to be created. The real object of this clause no doubt was, to guard against the enactment of a law, which should compel a man to sustain a religious establishment.

Seventhly, there is nothing in the decisions or *dicta* regarding territorial corporations—towns, parishes, school districts, &c.—at all inconsistent with the position above stated. Here the counsel referred to and commented on *Atwater* v. *Woodbridge*, 6 *Conn. R.* 228. *McLoud* v. *Selby*, 10 *Conn. R.* 390. *The City of Bridgeport* v. *The Housatonuc Rail-Road Company*, 15 *Conn. R.* 475. *Riddle* v. *The Proprietors of the Locks and Canals on Merrimack River*, 7 *Mass. R.* 169. *Adams* v. *Wiscasset Bank*, 1 *Greenl.* 364. *Brewer* v. *New-Gloucester*, 14 *Mass. R.* 216. *Merchants Bank* v. *Cook*, 4 *Pick.* 414. *Fernald* v. *Lewis*, 6 *Greenl.* 264. 268.

2. That if the members of the society are liable, the plaintiff is not, because he never joined the society in the manner pointed out by law. *Stat.* 574. *s.* 2. (ed. 1838.)

3. That his removal previous to the levy, exonerates him from personal liability.

4. That the fact that the society has estate, sufficient, or nearly so, to pay this debt, relieves the corporators from individual liability.

5. That the debt on which this judgment was rendered, was one never-contracted or authorized by the society; the note having been given by a minority of the committee.

*Strong* and *Hill*, contra, contended, 1. That the plaintiff was a member of *The Norwich Falls Society*. In the first place, he became a member, by voluntary association, at the original organization of the society. Secondly, his acceptance of office in the society and holding himself out to the world as a member, precludes him from saying that he was not.

2. That being a member, the plaintiff, like the members of

*New-London,
July, 1844.*

*Jewett
v.
The Thames
Bank.*

other public corporations, was individually liable for the debts of the society.   A society formed by voluntary association, pursuant to the 13th section of the statute relating to religious societies, has "all the rights, powers and privileges" of religious societies previously existing in this state.   All that constitutes the *nature* and *distinctive character* of the corporation being the same, the liability of its members must be the same. That ecclesiastical societies incorporated before the adoption of our state constitution, stand upon the same footing with respect to the liability of its members for its debts, as towns, school societies, cities, &c. cannot be doubted.   1 *Sw. Dig.* 72. 794.   *Atwater* v. *Woodbridge*, 6 *Conn. R.* 228, 9. *McLoud* v. *Selby*, 10 *Conn. R.* 390. 395, 6.   *Beardsley* v. *Smith*, 16 *Conn. R.* 368.

3. That the indebtedness of the society to the defendants, is placed beyond controversy.   In the first place, this debt is for money advanced by the defendants, to pay for the meeting-house erected under vote of the society, and *accepted* by them.   *Davidson* v. *Bridgeport*, 8 *Conn. R.* 472.   Secondly, the judgment furnishes *conclusive evidence* of the debt, both against the society and its members, who could have defended against the suit.

4. That the plaintiff, since he became a member of the society, has done nothing to discharge himself from his liability as such, to the creditors of the society.   In the first place, he has not separated himself from the society, by leaving a written notice with the clerk, pursuant to the 7th article of the constitution.   Secondly, as the society is not constituted with local limits, his removal to *Lisbon*, a distance of a few miles, would not produce this result.   He had still a right to vote in the meetings of the society, and to partake of all its privileges.

5. That the plaintiff has adequate remedy at law.   If the *Jewett City Bank* wrongfully refuse to pay him the dividends on his stock, or to permit him to transfer it, he may have complete redress in a suit against that institution.

CHURCH, J.   We waive the consideration of several questions, which have been discussed upon this hearing.   The decision of them has become unnecessary, by reason of the opinion we have formed upon the leading point in the case.

*New-London,*
June, 1844.

Jewett
*v.*
The Thames
Bank.

*The Norwich Falls Society* is an ecclesiastical corporation, formed by the voluntary association of individuals, on the 4th day of *November,* 1826 ; and was then legally organized, by the choice of officers.

Whether the plaintiff was a member of this society, when this debt was created, and the suit for its collection commenced, we need not determine. For the purposes of this case, it may be assumed to be true, as the defendants claim. If it be so, then arises the question, whether the *Jewett City Bank* can enforce the collection of the note it holds against the *Norwich Falls Society,* by levying an execution against the corporation, upon the private property of the plaintiff, one of its members ?

In the case of *Beardsley* v. *Smith, ante,* 368. we held, in conformity with the immemorial usage in this state, sanctioned by a long course of judicial recognition, as well as decisions, that the inhabitants of towns and other local political communities, known as *quasi* corporations, were liable as parties to suits against such corporations, and that their individual estate could be taken in execution for the satisfaction of corporate debts. The defendant now claims the application of that decision and principle to the present case. We repeat here, what we said there : " The law, as it is, and as we find it, must be our rule of decision." Neither in this country, nor in *England,* has it ever been supposed, that the private property of the members of private voluntary corporations could be taken to satisfy a debt of the corporation, unless it be so subjected by the provisions of its charter. On the contrary, a different doctrine has been every where established. *The Norwich Falls Society* is a corporation of this character, and, in its essential features, is entirely unlike a municipal association, created by the legislature for political objects, with defined territorial limits, and embracing as members all persons within its boundaries. It more nearly resembles, and falls under the law applicable to, incorporated academies, colleges, and other literary institutions. And although this society is without a special charter, it was essentially incorporated, by virtue of the 13th section of the statute relating to religious societies and congregations.

During the early history of the state, and before the adoption of our present constitution, all ecclesiastical societies

having territorial limits, were considered to be, and in fact were, municipal and public corporations. Indeed, they were originally co-extensive and identical with the several towns. And when, in many instances, they became separate communities, they still retained their public and political character. To support and maintain religious instruction and worship, through the agency of these societies, was a public duty, enjoined by law; as much so, as to promote education, by means of common schools; or to support the poor, and maintain roads and bridges, through the agency of towns. And every individual residing within the limits of any such society, was considered by the law as much a member of it, as each resident of a town was deemed its inhabitant, except only in cases where individuals, by special legal indulgence, were excused from taxation for the religious objects of the society. In later times, and since the constitution of the state has been adopted, a different state of things, in this respect, has existed. The law, now, makes no compulsory provision for the support of ecclesiastical institutions. "The exercise and enjoyment of religious profession and worship shall be forever free." "No person shall by law be compelled to join, or support, or be classed with, or associated to, any congregation, church or religious association." This is the language of the constitution. And of course, no person can now become a member of a religious society, until, by his voluntary act, he has united with it. How far these constitutional principles break in upon the former located ecclesiastical societies, existing under the old institutions, we need not determine. But certain it is, that a corporation, constituted in modern times, by voluntary association, under our present laws, is a private, and not a municipal or *quasi* corporation. Such an association was *The Norwich Falls Society.* Societies like this, unlike towns, cities and school districts, are not by law compelled to assume duties, incur liabilities and contract debts. The difference between them and *quasi* corporations, is, in this and many other respects, essential and clear; and therefore, we cannot, in the absence of all usage, analogy and authority, apply the remedy given by the law to the creditors of towns, &c., so as, in the same manner, to subject the persons or estate of the members of private and voluntary incorporated companies, to responsibility for corporate debts.

We shall therefore advise, that the prayer of this bill be granted, and that *The Thames Bank* be enjoined against any further proceedings against the property of the plaintiff for the collection of this debt.

In this opinion the other Judges concurred, except WAITE, J., who gave no opinion, being a stockholder of *The Thames Bank.*

Decree for plaintiff.