# ROLLIN AMSDEN v. JOHN P. ATWOOD.

## October Term, 1894.

*Tenant holding over. When tenancy becomes one from year to year.*

1. If a landlord suffers his tenant, who has been holding under a written lease providing for the payment of an annual rent, to remain in possession and pay rent for one full year after the expiration of the term and to enter upon a second year, the tenancy thereby becomes one from year to year, and the tenant may complete the second year.

2. The fact that the tenant, after receiving a notice to quit after entering upon the second year, decides to vacate the premises and removes a part of his machinery, does make due rent which would not be due by the terms of the lease, there being no surrender of the premises by the defendant.

3. *Held*, that the agreement between the parties extended all the covenants of the original lease not specifically changed.

General assumpsit.  Plea, the general issue and offset. Trial by jury at the May term, 1894, Windsor county, Thompson, J., presiding.  The court directed a verdict for the plaintiff.  The defendant excepts.

The plaintiff sought to recover for certain articles furnished by him to the defendant about which no question was made.  He also claimed to recover for rent of power and use of mill under the contract of lease set forth in the opinion of the court from October 1, 1892, to the date of the writ in this suit, which was December 27, 1892.  The court directed a verdict for the plaintiff in the sum of two hundred fifty-

19

seven dollars and ninety-four cents and gave judgment there-
on, to which the defendant excepted.  In this amount the
court included rent of power for the month of November and
two-thirds of the month of December, 1892, and use of the
mill from November 1 to December 19, 1892.

After December 19 the plaintiff refused to saw the logs
of the defendant, and on December 26 gave the notice men-
tioned in the opinion of the court.  The defendant did no·
work in the premises after December 19.

The defendant offered to show under his plea in offset
that he had contracted for large quantities of logs to be man-
ufactured under this lease, and that by the action of the
plaintiff he was deprived of the profit he would have there-
by made.  The court held that upon the evidence the de-
fendant was not entitled to go to the jury upon his plea in
offset, to which defendant excepted.

*J. J. Wilson* and *J. C. Enright* for the defendant.

The new agreement between the parties extended all the
terms of the old lease.  *Monfort* v. *Stevens*, 68 Mich. 61 ;
*Gray* v. *Clark*, 11 Vt. 583 ; *Kyle* v. *Billenger*, 79 Ala. 516 ;
*People* v. *Lee*, 7 Cent. Rep. 35 ; *Mathews* v. *Phelps*, 61
Mich. 327.

By the acts of the parties the tenancy of the defendant
had become one from year to year, which the plaintiff could
not terminate at his pleasure.  *Switzer et al.* v. *Pinaning
Manfg. Co.*, 59 Mich. 488 ; *Evans* v. *Sander*, 8 Porter 497 ;
*Adams* v. *Hill et al.*, 16 Me. 215 ; *Cocheo Bank* v. *Berry*,
52 Me. 293 ; *Clark, Apt.*, v. *Howland et al.*, 85 N. Y. 204 ;
*Miller* v. *Ridgley*, 19 Ill. appt. 306 ; Taylor, Land & Ten.,
s. 58 ; *Putehell* v. *Ritter*, 16 Ill. 96 ; *McKenney* v. *Peck*, 28
Ill. 174 ; Wood, Land. & Ten., s. 13, pp. 19, 20 ; *Schyler*
v. *Smith*, 51 N. Y. 309 ; *Parker, Admr.*, v. *Hollis et al.*,
50 Ala. 411 ; *Coombero* v. *Heffnor*, 86 Ind. 108.

*Gilbert A. Davis* and *W. B. C. Stickney* for the plaintiff.

The plaintiff having elected to vacate after the notice of December 26, he should be compelled to pay rent for the time that he actually occupied the premises. *Patchin* v. *Dickerman*, 31 Vt. 660; 1 Washb., R. P., 394, s. 2; *Chamberlin* v. *Donahue*, 45 Vt. 55.

Notice that if a tenant continues in possession it must be at an increased rent amounts to a notice to vacate. *Amsden* v. *Blaisdell*, 60 Vt. 390; *Whitney* v. *Gordon*, 1 Cush. 266, 269; *May* v. *Rice*, 108 Mass. 150; (11 Am. Rep. 320); *Farson* v. *Goodale*, 8 Allen 202.

A tenant holding over is not entitled to a notice to quit.' *Rich* v. *Bolton*, 46 Vt. 84; Wood, Land. & Ten., ss. 18, 19; *Logan* v. *Herran*, 8 S. & R. 459; *Anderson* v. *McLeod*, 12 Johns. 182; *Stedman* v. *Gassett*, 18 Vt. 346; *Osgood* v. *Dewey*, 13 Johns. 240; *Abul* v. *Radcliff*, 13 Johns. 297.

The act of the defendant in electing to vacate the premises was notice to the plaintiff that he would not continue the tenancy, and the plaintiff might bring his action at once. *Hochester* v. *De la Tour*, 20 Eng. L. & Eq. R. 175; *Burtis* v. *Thompson*, 42 N. Y. 246; *Burge* v. *Koop*, 48 N. Y. 225; *Freer* v. *Dunton*, 61 N. Y. 492; *Fox* v. *Kelton*, 19 Ill. 519; *James* v. *Mitchell & Adams*, 16 W. Va. 245; *Dangley* v. *Ober*, 11 Fed. Rep. 373; *Holloway* v. *Griffith*, 32 Iowa 409; *McCormick* v. *Bascal*, 46 Iowa 235.

The damages under the plea in offset were too remote. *Thompson* v. *Shattuck*, 2 Met. 615; *Griffin* v. *Colver*, 16 N. Y. 489; *Wehle* v. *Butler*, 61 N. Y. 245; *Olmsted* v. *Burke*, 25 Ill. 86; *Shaw* v. *Wallace*, 1 Dutch. 453; *Middlekouff* v. *Smith*, 1 Md. 343; *McKinnon* v. *McEwan*, 48 Mich. 106; *Willingham* v. *Hoovan*, 74 Ga. 233; *Allis* v. *McLean*, 4 Mich. 428; *Krom* v. *Levy*, 48 N. Y. 679;

*Davis* v. *C. H. & D. Rd. Co.*, 1 Desney, 23 ; *Pennypacker* v. *Jones*, 106 Penn. 237.

TYLER, J. It appeared on the trial that the plaintiff was the owner of a water power, with a saw-mill and machinery situated thereon, in Windsor, and that on August 19, 1885, by an indenture, he leased a portion of the same to one Loring Atwood for the term of five years from October 1, 1885, at an annual rent of four hundred dollars, in quarterly payments of one hundred dollars, on the first of January, April, July and October. It was stipulated in the lease that the plaintiff should build a dry-house on the premises, and that the lessee should pay him as rent therefor eight per cent interest on its cost. It was further stipulated that the plaintiff should saw the lessee's logs for his business—the manufacture of chair stock—at a price thereafter to be agreed upon and indorsed on the lease. It was afterwards agreed that the price should be sixty cents an hour, but it was not indorsed.

The lessee entered into the use and occupation of the premises and continued therein until April 1, 1890, when with his consent a new contract was executed by the plaintiff and the defendant as follows :

"That whereas said John Atwood has taken the place of Loring Atwood in a contract or indenture dated the nineteenth day of August, 1885, executed by and between Loring Atwood and the said Amsden, and whereas certain modifications and extensions of said contract or indenture have been mutually agreed upon by and between said Amsden and said John Atwood which it is deemed desirable to put in writing ; therefore be it known that the said Amsden, for a valuable consideration, doth hereby extend the lease set forth in said contract or indenture of August 19 for the term of one year from the first day of November, 1890, with a further extension of a term not exceeding five years from the first day of November, A. D. 1891, at the option of said John Atwood, provided he shall give to said Amsden notice in writing at least three months prior to November 1, 1891,

of the number of years for which he shall elect to hold and enjoy such extended term; and the said John Atwood, in consideration of the foregoing, doth hereby covenant and agree to and with the said Rollin Amsden that he will pay in equal quarterly instalments of one hundred nine dollars and forty-four cents on the first days of January, April, July and October, for such extended terms as the rent thereof, except so far as said rent may be reduced under the provisions of said indenture of August 19, 1885, and that he will in all respects fulfil all the contracts and agreements of the said Loring Atwood therein contained. It is further mutually agreed and covenanted that if the said John Atwood does not have logs so as to run his chair works from the first day of April to the first day of November, A. D. 1890, then the rent is to be reduced one-half for such time only between said dates as said shortage of stock may exist."

It is clear that the original lease with all its covenants was extended by this contract, excepting so far as the covenants were thereby changed. The only changes made were a slight reduction in the quarterly rent, and a further agreement that the rent should be reduced one-half for such time between April 1 and November 1, 1890, as the defendant was short of logs for his chair works.

The new contract definitely extended the lease to November 1, 1891, with an option in the defendant to have it extended a further term, not exceeding five years from that date, by giving the plaintiff three months previous notice thereof. As the defendant failed to exercise his option the lease terminated by its own limitation on that date, and the defendant remained in possession without right.

The relation of landlord and tenant can exist only by virtue of a contract, express or implied. It may be created by implication of law as well as by express contract. Here the express contract had terminated, and the question is whether the defendant remained as a tenant by implication of law, and if so, what was the nature of his tenancy?

It is clear that after the extended lease terminated the

plaintiff might have evicted the defendant. He allowed him to remain without objection until November, 1, 1892, and thence until December 26 of that year, when he gave him a written notice that he regarded him as a tenant by sufferance; that the rent would be increased to six hundred dollars after January 1, 1893; that the charge for sawing logs would be increased, and that as a condition of the defendant's continuing as his tenant he should not employ men who were personally offensive to the plaintiff.

In *Blumenburg* v. *Myers*, 32 Cal. 93, it was decided that a tenancy by implication arose, subject to the covenants and conditions of the original lease, where the tenant held over and the landlord received rent after the expiration of the term. This was on the ground that the receipt of the rent was an acknowledgment of a subsisting tenancy. Numerous cases are cited in the valuable notes to this case in 91 Am. Dec. 560, to the effect that a tenant whose term has expired, and who, instead of quitting the premises as he ought to do, remains in possession, holding over, is a wrong doer, and the landlord may treat him either as a trespasser or as a tenant for another year upon the same terms, at his option; *Den* v. *Adams*, 12 N. J. L. 99; *Rowan* v. *Lytle*, 11 Wend. 619; *Adams* v. *Duker*, 11 N. J. L. 84; that this is so, though the tenant has no intention of holding over for a year or of paying the same rent; *Hemphill* v. *Flinn*, 2 Pa. St. 144; *Bacon* v. *Brown*, 9 Conn. 362; even where before the expiration of his term he notifies the landlord that he does not intend to keep the premises another year, but nevertheless remains in possession; that his remaining fixes him as a tenant for another year if the landlord chooses to treat him as such.

Wood, on Land and Ten., s. 484, says:

"By holding over after the expiration of the term, the lessee becomes a tenant at sufferance. He does not thereby necessarily become a tenant from year to year, though such

a holding, accompanied with payment of rent or other rec-ognition by the lessor of a tenancy, may ripen into an estate of that description ; the tenant, in the absence of evidence to the contrary, being bound by the terms of the expired lease, so far as they are applicable to such an estate, without any new bargain to that effect between him and the lessor." * * *

In s. 13 of the same work the author says :

"By the common law, if a tenant who has occupied and paid rent annually holds into a new year, it is evidence of a new demise for a year, or rather from year to year, according to the circumstances, or of a tenancy at will, if the circum-stances are such as to rebut a renewal of a former tenancy," and cites *Jackson* v. *Salmon*, 4 Wend. 327 ; *Bradley* v. *Covel*, 4 Cow. 349, and *Digley* v. *Atkinson*, 4 Camp. 178. In that section it is said that the landlord may treat the ten-ant holding over as a trespasser, or as a tenant holding over on the terms of the original lease. In such case the lease is not the *contract* under which the tenant holds, but is *evidence* of the contract. The tenant holds upon the terms of the ex-pired lease unless notified of new terms before the lease ex-pired.

In 4 Kent's Com. 112, it is laid down that :

"If the tenant holds over by consent given, either expressly or constructively, after the determination of a lease for years, it is held to be evidence of a new contract, without any definite period, and is construed to be a tenancy from year to year. The moment the tenant is suffered by the landlord to enter on the possession of a new year, there is a tacit renovation of the contract for an-other year, subject to the same right of distress."

This is recognized as a correct statement of the law in *Silsby* v. *Allen*, 43 Vt. 172. In that case it was held that an estate at will was convertible into a tenancy from year to year by the payment of rent—not by the length of time that the tenant held and paid rent—but by the fact that he entered and held under a stipulation to pay annual rent, and paid accordingly. *Hall* v. *Wadsworth*, 28 Vt. 410 ; *Barlow* v. *Wainwright*, 22 Vt. 88.

In *Boudette* v. *Pierce*, 50 Vt. 212, the building leased for a stable was enlarged by the tenant, and without right used by him and his family as a tenement; *held*, that such use was in violation of and put an end to the contract, if the plaintiff had so elected; but that the defendant's continued occupancy for a succession of years and his payment of annual rent converted the tenancy, however it should be designated in its inception, into a tenancy from year to year. *Amsden* v. *Blaisdell*, 60 Vt. 386, is not at variance with this doctrine; on the contrary, it is there recognized that in order to convert a tenancy at will into one from year to year, an occupation for a second year must at least be entered upon. See *Stedman* v. *McIntosh*, 42 Am. Dec. 122 and notes; *Vrooman* v. *McKaig*, 59 Am. Dec. 85.

It would be a fair test of the soundness of this doctrine to inquire whether the tenant, having held over one full year after the termination of his written lease and entered upon a second year, could then quit the premises at pleasure without further liability to pay rent. That he could not is settled in *Barlow* v. *Wainwright*. See notes to this case in 52 Am. Dec. 79. In *Haynes* v. *Aldrich*, 133 N. Y. 287, it was decided that from the fact of the tenant's holding over after the expiration of his term, the law implied an agreement to hold for a year upon the terms of the prior lease; that the option to so regard it was with the landlord and not with the tenant, and that the latter held over at his peril. In that case the tenant informed his landlord that he did not wish to renew his lease, and that he intended to surrender possession at its termination, but he was prevented from so doing for two days by his inability to procure trucks to move his goods, and by the illness of a boarder. It was held that these facts did not prevent such holding over from operating as a renewal of the lease for another year if the landlord elected so to treat it. In the note to that case in 28 Am. St. R. 636, it is said to be the general rule that if a tenant

for one or more years holds over, at the expiration of his term the landlord may treat him as a trespasser, or as a tenant for another year upon the terms of the prior lease, as far as applicable. Cases from New York, Rhode Island, Indiana and Minnesota, are cited in support of this doctrine.

Therefore, unless the defendant surrendered his right to the premises, and in legal effect admitted his liability for their use to December 26, 1892, it must be held that when the plaintiff brought the suit his claim for rent for any part of the quarter commencing November 1, 1892, had not matured, and that there was error in including in the judgment the items for "use of mill" and "rent and power" which became chargeable after that date.

It appeared that in September, 1891, the plaintiff requested the defendant to exercise his option, and that the latter declined to have the lease extended beyond November 1, 1891, for the reason that it was uncertain whether he could obtain logs for his business the next winter. But after that date he "stayed right along," as the plaintiff testified, with no new agreement as to his occupancy, and paid his rent as he had done under the written contract. After that year was completed he continued his occupancy, and was in possession of the premises on December 27 when the plaintiff's writ was served. The defendant claimed that there was a conversation in August, 1892, about his remaining till the next spring, but that it did not amount to an agreement. The plaintiff denied having such conversation.

We do not think that the defendant's deciding to vacate the premises, and his act of taking down and removing his machinery after the plaintiff's notice to him of December 26, can be construed as conferring upon the plaintiff a right of action for rent not then due. There was no surrender of the tenancy by the defendant nor acceptance thereof by the plaintiff. The plaintiff did not repudiate the relation of

landlord and tenant. He rendered monthly statements of rent to the defendant through the entire year 1892, as he had previously done, and thus recognized him as his tenant, though in his notice of December 26 he called him a tenant by sufferance.

If, at the expiration of the extended lease, the plaintiff had done no act recognizing a continued tenancy, the defendant would have been within the definition of those who come in by right and hold over without right. He would have remained merely by the plaintiff's laches as his tenant at sufferance. The plaintiff elected to recognize him as a tenant for another full year by taking his rent, and allowing him, without objection, to enter upon a second year. This, we think, made the defendant a tenant from year to year. He at least had a right to complete the year upon which he had thus entered.

*Judgment reversed and cause remanded.*